THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE A. LEHNHOFF, Appellant, *v.* ARTHUR WOODS, as Police Commissioner of the City of New York, Respondent.

Second Department, February 9, 1917.

Municipal corporations — city of New York — certiorari to review determination of police commissioner finding policeman guilty of needlessly discharging his revolver.

Proceeding by certiorari to review the determination of the police commissioner of the city of New York in finding the relator guilty of neglect of duty and fining him fifteen days' pay. The specifications were that the relator failed to exercise proper precaution to insure the safekeeping of the prisoner who escaped from his custody, and that in an attempt to recapture him the relator needlessly discharged his revolver, the bullet therefrom striking the prisoner in the head causing his death. It appeared that the prisoner had been arrested merely for boisterous conduct in public and was intoxicated at the time.

*Held*, on all the evidence, that the relator was properly convicted for needlessly discharging his revolver, and that the sentence imposed was a very light one.

CERTIORARI issued out of the Supreme Court and attested on the 29th day of February, 1916, directed to Arthur Woods, as police commissioner of the city of New York, commanding him to certify and return to the office of the clerk of the county of Kings all and singular his proceedings had in finding the relator guilty of neglect of duty and fining him.

*Florence J. Sullivan* [*William Harrison Robinson* with him on the brief], for the relator.

*Thomas F. Magner* [*Lamar Hardy, Corporation Counsel,* and *Frank Julian Price* with him on the brief], for the respondent.

MILLS, J.:

This is a proceeding by way of certiorari to review the determination of the defendant, as police commissioner of the city of New York, in finding the relator guilty of certain specifications charging him with neglect of duty and fining him fifteen days' pay. The specifications were: (a) That the relator at

about eleven-forty P. M. on July 25, 1915, at or near the corner of Kingsland and Tieman avenues, Corona, arrested one Albert Michaels and failed to exercise proper precaution to insure the safekeeping of the prisoner, who escaped from his custody; and (b) that, in an attempt at such time and .place to recapture said escaped prisoner, the relator needlessly discharged his revolver, the bullet therefrom striking the said Michaels in the head, behind the left ear, causing his death.

I think that the relator was properly convicted upon the second specification, and that the sentence imposed was a very light one. I base this conclusion upon his own evidence, which was to the following effect: At about half-past eleven, or shortly thereafter, on July twenty-fourth he was waiting at the corner of Kingsland and Tieman avenues for a trolley car to take him, as I infer, to his regular beat. He saw Michaels and some other young men in front of a nearby saloon drinking and talking loudly. A foreigner came along the street and Michaels ran up to him and hollered, "Where are you going?" and, the foreigner not replying, Michaels grabbed him by the shoulder and swung him around, and the man then said in broken English, "What is the matter; why don't you leave me alone?" and to Michaels' further inquiry, "Where are you going?" the man said, "To New York," and Michaels said, "Why, you don't belong in New York; you have been around here before." Thereupon the relator thought it was time to interfere, and went towards them. Michaels then said to the officer, "Why don't you take care of this man; he is lost?" and relator said, "How do you know he is lost?" and Michaels replied, "I know him; I worked with him." The relator then said, "If you know him and worked with him, why don't you take care of him?" and Michaels said "Why should I take care of him when the City of New York is paying you to take care of him?" The relator then said, "Why don't you mind your own business anyway, you are butting in any way and if I done the right thing I would take you to the Elmhurst Police Station, and besides, * * * you are drunk." Then Michaels said (not perhaps unnaturally), "Why you could not arrest me; I dare you to arrest me." Thereupon the relator, accepting the dare, placed him under arrest. His comrades came about and, the car arriving, the

relator placed Michaels on the rear platform and some one in the crowd shouted out, "You can't take him down." The relator said, "Why can't I?" and some one responded, "We won't let you," and with that two of the young men got onto the car. The relator seized them, and thereupon Michaels jumped off from the car and ran away. The relator then jumped off from the car, holding on to one of the others, and called to Michaels to stand where he was, as he was a prisoner, but Michaels continued to run and then apparently turned and came back by the relator. Then the relator called to him to stop or he would shoot, but Michaels continued to run. Then the relator called again, "If you don't stop I will shoot?" and Michaels, while running, turned and called out, "Go ahead and shoot, God damn you?" Thereupon the relator drew his revolver and fired one shot low, and the moment he fired Michaels changed his course of running and stumbled and fell.

The theory and claim of the relator was that Michaels was hit when his head was down to the ground from his stumbling and falling. He was in fact shot in the head.

From the relator's own narrative as summarized above, it is evident that he knew and at the time realized that the man, Michaels, was drunk. Indeed, it is quite likely that the man's zigzagging, of which the defendant testified, was due to his staggering, and that his turning back in his flight was due to his drunken condition. Assuming now that the officer, the relator, had a right under the rules of the department to shoot his revolver into the ground, so as to scare the fleeing man into surrendering himself, I think that he must have handled the revolver recklessly in discharging it into the ground at such an angle that the ball could strike even the feet of the fleeing man, then at a distance from him of from twenty to thirty feet. It is quite likely that the story of the man's stumbling and falling just as the revolver was discharged, so that the ball struck him in the head while the head was at the ground, is an entire fiction on the part of the defendant. Other proof indicated that he fell just as the shot was fired, and that the flash indicated that the relator was holding the revolver about on the line of his waist. But, accepting his story, I think that he acted recklessly even in shooting in the general

direction in which the man was running. He should have shot, if at all, pointblank into the ground near his own feet.

If the question here was directly involved I should hesitate to declare that an officer has a right to shoot at a half drunk man, who at the most has committed merely the misdemeanor of boisterous conduct in public, although apparently, according to the testimony of the police captain, the rules of the department permit such extreme conduct even in such a case. In short, I think that the relator came very fortunately out of his trial before the commissioner, and should have been content to let well enough alone.

I advise, therefore, that the determination of the police commissioner be confirmed and the writ dismissed, with fifty dollars costs and disbursements.

JENKS, P. J., THOMAS, STAPLETON and PUTNAM, JJ., concurred.

Determination confirmed and writ dismissed, with fifty dollars costs and disbursements.